## Spencer v. Kinnard.

In a petition for a new trial, after the adjournment of the Court, it must be shown first, that injustice was done ; and second, a satisfactory reason must be shown, why the proper defence was not made on the trial, and why a motion for a continuance or new trial was not filed at the proper time.

See this case for circumstances which were held sufficient to sustain a petition for a new trial and an injunction, filed after the adjournment of the Court.

It is no part of an attorney's duty to make affidavits, and therefore where the absence of the client, when he should have been present, is accounted for, it cannot be answered that his attorney was present.

Appeal from Harrison.

*D. J. Jennings* and *M. J. Hall*, for appellee. The bill contains no sufficient reason for the interference of the Court. It goes on to relate what the appellant calls the facts of the case, reciting minutely the circumstances attending the original trial, at least such of them as he chooses to refer to ; but he does not pretend to say that these facts were unknown to him, or could not have been used by him as a defence. On the contrary, he admits his knowledge of every fact involved in the case, on the trial, and the only reason given for the equitable interference of the Court is, " That he was unable

" to make a defence to the said suit at the last Term of the " District Court, in consequence of a severe fit of illness from " which he was then suffering, and the absence of witnesses " who had been regularly subpœnaed, and avers that he will " at the next Term of the District Court, be able fully to es- " tablish all the facts and allegations set forth in his petition."

He does not state that he employed any counsel or used any diligence to prepare for trial, although he admits in his bill that the cause had been pending in Court nearly twelve months before the trial, and that one Term of the Court had passed without a trial. He does not allege whether he was ready for trial, or that not being ready he or his counsel made any motion for a continuance, or that after the trial he made a motion for a new trial. It would seem that the plaintiff was designedly silent on those points, to avoid a confession of facts which he knew must condemn him. But with this suppression of facts and the expression of such as he chooses to swear about, the bill contains nothing in substance that could authorize the equitable interposition of the Court. Before Courts of Law were in the exercise of their present liberal jurisdiction over the subject of new trials, the parties were frequently forced into equity to be relieved from oppressive verdicts. (3 Blk. Com. 388.) Since, however, that jurisdiction has been well established and freely exercised on equitable as well as legal grounds, the party failing in his application at law for a new trial will not be relieved in equity, at least upon the same merits already discussed, and fully within the discretion of the Court of Law. In the case of Simpson v. Hart, 1 Johns. Chan. Rep. 91, Lord Redesdale said, "'That he could not find any " ground whatever for a Court of Equity to interfere because " a party had not brought evidence which was in his power " at the trial." It is now the settled doctrine of the English Chancery Courts, that a party is not entitled to relief against an oppressive judgment, on the ground of its being contrary to equity, unless he was ignorant of the fact in question, pending the suit, or it could not have been received as a defence.

(Williams v. Lee, 3 Atkin. 223.)   When relief is sought in
this form, after a continuance, a new trial, and the right of
appeal have all failed, the question is, according to the case
just cited, not whether the party was prevented by indisposi-
tion from defending himself, but whether he at the time knew
the facts relied on to sustain his application for relief.   In the
case of Smith v. Lowry, 1 Johns. Chan. Rep. 320, the Chan-
cellor said, "Applications to this Court for a new trial after a
" verdict at law, are very rare in modern times, since Courts
" of law exercise the same jurisdiction and to the same liberal
" extent."   In the case of Sorey v. Young, Prec. in Chan. 193,
the bill for a new trial was dismissed, though the plaintiff had
discovered, since the trial, that the principal witness against
him was interested, and the Lord Keeper observed, " that new
" matter may, in some cases, be ground for relief, but it must
" not be what was tried before, nor when it consists in swear-
" ing only, will I ever grant a new trial, unless it appears by
" deed or writing, or that a witness on whose testimony the
" verdict was given was convicted of perjury."   The case of
Floyd v. Jayne, 6 Johns. Chan. Rep. p. 480, is a strong case
in point.   The bill was for a new trial after a verdict at law.
The ground of application was the discovery since the verdict
of testimony to prove the payment of the note sued on, and the
want of power in that Court (the Common Pleas) to grant a
new trial, otherwise than for irregularity, none of the Judges
being of the degree of Counsellor in the Supreme Court.   In
refusing the application the Court said: "It is the settled doc-
" trine and practice of this Court, as well as of the Courts of
" Law, that a party is not entitled to relief after verdict upon
" testimony which, with ordinary care and diligence, he might
" have procured, and used upon the trial at law."   Tested by
the rule in this case, the question would be not whether he did
defend himself, but whether with ordinary diligence and at-
tention he could have defended himself.   It was not sufficient
for him to sit down and order subpœnaes for his witnesses. He
should tender to them their necessary expenses, and then if

they failed to attend, had attachments issued for them. He shows no diligence and is entitled to no relief.

In Leguen v. Gouveneur and Kemble, 1 Johns. Cas. 436, which from the ability of the counsel engaged, (Hamilton, Harrison and Burr for the appellant, and Livingston, Troup and Gouveneur Morris for respondents,) and the high character of the Court may be considered the leading case on this subject, Mr. Justice Ratcliffe said : " The general principle that the "judgment or decree of a Court possessing competent juris- " diction, shall be final as to the subject matter thereby deter- " mined, is conceded on both sides, and can admit of no doubt." The principal, however, extends further. It is not only final as to the matter actually determined, but as to every other matter which the parties might litigate in the cause ; and which they might have had decided. (See Prec. in Chan. 221 ; 3 Atk. 224; 1 Vern. 176 ; 2 H. B. R. 414 ; 7 Term. R. 269 ; 2 Cases in Chan. 95 ; Cha. Rep. 243 ; 2 Burr. 1009.) Now it is scarcely possible that the plaintiff was severely indisposed for nearly twelve months during the pendency of the suit. If not, it was his duty to employ counsel, and carry his witnesses that they (the counsel) might be acquainted with the facts, in which event the personal attendance of the plaintiff would have been unnecessary.

· It cannot be questioned that notwithstanding his "severe indisposition," he might have had determined every question involved in the case. The reasons in favor of this extent of the rule appear to me satisfactory ; they are founded in the experience and propriety of silencing the contentions of parties, and of accomplishing the ends of justice by a single and speedy decision of all their rights. It is evidently proper to prescribe some period to controversies of this sort ; and what period can be more fit and proper than that which affords a full and fair opportunity to examine and decide all their claims.

A different rule would tend to unsettle all the determinations of law and open a door for infinite vexation. He also quotes Lord Hardwick as having said in regard to a bill of

review, which is analagous to the case under consideration, " that there are always two points to be attended to on a pe- " tition for that purpose :

" 1st. To show that the new matter upon which such bill " is sought, has come substantially and materially to the " knowledge of the party or his agent since the time of the de- " cree in the former cause.

" 2nd. That it is probable such new matter is relevant."

" Again it is held that forgetfulness or negligence of par- " ties, under no incapacity, is no foundation for a bill of re- " view ; or matter already settled, or which might have been " put in issue and settled in the original case, shall never be " drawn into examination on a bill of review."

In every light, therefore, in which this matter can be seen, whether we view it as considered by Courts of law with regard to their own determinations, or by Courts of Equity with re- gard to their own decrees, or in relation to the interference of the latter with the judgments of the former, the same rules and the same principles prevail.　In his able opinion in this case, Mr. Justice Kent said : " Every man is bound to take care of " his own rights and to vindicate them in due season and in " proper order.　Accordingly, if a defendant, having the means " of defence in his power, neglects to use them and suffers a " recovery to be had against him by a competent tribunal, he " is forever precluded."　(2 Burr. 1009 ; 7 Term R. 269 ; 2 Hen. Blk. 414.)　" The general rule is intended to preserve " peace and prevent litigation, and if it were otherwise, men " would never know when they might repose with security on " the decisions of Courts of Justice ; and judgments solemnly " and deliberately given might cease to be revered, as being " no longer the end of controversy and the evidence of right." " It is a settled maxim of equity that no evidence or matter in " the knowledge of the party, and which he might have used " in the former suit, shall be the ground of a bill of review." (3 Blk. 454 ; 1 Eq. Ca. 81 ; 2 Atk. 178 ; 3 Atk. 35 ; 1 Vez. 434 ; 3 P. Wm. 371.)　He quotes Lord Talbot to have said :

" Unless this relief was confined to new matter proved to have
" been discovered since the trial, it might be made use of as a
" method for a vexatious person to be oppressive, and for the
" cause never to be at rest. Not only bills of review are de-
" nied, but in pursuance of the same principle, a Court of
" Chancery never relieves against a verdict at law on the
" grounds of its being contrary to equity, unless the defend-
" ant below was ignorant of the fact at the trial, or it could
" not have been admitted as a defence." (2. Wash. 258, 270,
272; 2 P. Wm. 426; Prec. in Chan. 221; 3 Atk. 223.) Now,
it is not pretended that the appellant was ignorant of the facts
at the trial, or that they could not have been used as a defence ;
but the simple assertion is made that the appellant's illness and
the non-attendance of witnesses, who had been regularly sub-
pœnaed, prevented his making a defence. If he did his duty
and employed counsel and acquainted them with the names of
the witnesses, and the facts to which each one would testify,
though he may have been sick at the trial, his counsel could
have applied for a continuance, and if refused by the Court,
that would have been a ground of error on appeal. He could
also have applied for a new trial. But all these were neglected,
so far at least as appears from this bill ; and the party now
applies to the equity side of the Court, for permission to re-liti-
gate and re-try the same facts already determined by the Court
below. There is not a single reported case, in any authority
not now overruled, to justify such a proceeding. " This being
" the general doctrine in the book, says Chancellor Kent, I do
" not regard any solitary case (2 Vern. 147 ; Prec. in Chan.
" 233,) that may be found to the contrary, as having any force
" to shake it." Justice Bronson concurred, and Mr. Chief
Justice Lansing delivered an elaborate opinion affirming the
same doctrine. Lewis J. alone dissented. If the opinion of these
eminent jurists, as quoted above, may be regarded as law,
there is not one solitary statement or allegation in the bill,
which could for a moment justify the interposition of a Court
of Equity.

LIPSCOMB, J. The petition was filed, praying a new trial and an injunction enjoining the defendant from prosecuting execution on the judgment obtained by him against the petitioner. It is alleged in the petition, that judgment had been rendered in a suit against petitioner, purporting to be founded on a note given by the petitioner, to the defendant, for sixteen hundred and ten dollars; that the note had been given in consideration of property purchased by petitioner from the plaintiff, which trade was cancelled, and the property returned to the plaintiff, and the note given up to petitioner; that petitioner threw the note into the fire place, and believed it to have been destroyed, until a short time before suit was brought, that he was informed that it was not destroyed, but that it had been seen by Mr. Hall, who shortly thereafter commenced the suit for the plaintiff, on the note that had been so cancelled, and the property for which it was given returned to the plaintiff, Kinnard. The petitioner alleges that he could have proved all of the facts alleged, on the trial, and had witnesses subpœnaed to sustain his defence; that he is informed that the witnesses did not attend, and that petitioner was confined at home by a violent attack of disease, and could not make the affidavit required by law, to procure a continuance; and there was a trial in his absence and a verdict and judgment rendered against him for the amount of the note; that petitioner was unable to be present to make affidavit for a new trial; that he can prove, if a new trial is allowed him, that the note sued on had been cancelled, and the property for which it was given returned to the plaintiff. The petitioner makes, as exhibits to his petition, some seven or eight affidavits of persons, to the truth of the allegations of the rescission of the contract, the return of the property and the cancellation of the note sued on.

There are many other allegations in the petition, presenting a case of most extraordinary features. But we have not thought it proper to refer to all of them in this statement, and have stated only enough to sustain the conclusion we have arrived at in this case.

There was an injunction granted, which was demurred to, and the injunction dissolved, and the petition dismissed on motion, from which decision the petitioner appealed.

In an application to the Chancery for a new trial, at law, where the distinction of jurisdictions is observed, it is necessary to show, first, that injustice has been done by the verdict and judgment at law. If the facts contained in the petition and exhibits are true, there can be no question, but the most gross injustice has been done to the applicant, and that if he cannot have a new trial, he will be unjustly, and by the fraud of the plaintiff in the suit and judgment, compelled to pay upwards of two thousand dollars, without any consideration at all received for the same, a hardship and oppression, furnishing strong and sufficient grounds for relief, unless his own gross and culpable negligence has brought it on himself. We are bound to take these allegations as true ; and for all purposes necessary to our decision, the demurrer admits them to be true.

The next question is, has the complainant shown any sufficient and satisfactory reason why he did not make his defence on the trial of the action on which the judgment complained of was rendered ? We believe that this is sufficiently manifested, from the fact of his severe illness. This illness is to be regarded as an infliction of Providence, to which should not be superadded, so severe a pecuniary liability, as a penalty for not doing the very thing that the Providential infliction had made it impossible that he could do. It would be worse than mockery, to say to a sick man, prostrate and grappling with disease, why did not you attend Court, advise your counsel of your witnesses, and make an affidavit, if necessary, for a continuance ? or make one to support an application for a new trial ? If you have suffered injustice, and an oppressive and unjust judgment has been rendered against you, it is all your own fault. You ought to have been in Court, whether able to be there or not. For that is really the proposition.

But it is said, that though sick, the petitioner ought to have

had his counsel there to represent him. We trust that it is not insisted, that counsel should represent their clients, in making affidavits. Surely this is not believed to constitute any part of the duty of counsel to their clients. The ends of Justice sometimes make it necessary, that an attorney should give evidence for his client, but it should always be regarded by counsel as a misfortune, to be placed in such a position; and Courts should extend no countenance to the practice, and only tolerate it in cases of pressing necessity.

The allegations in the petition, taken as true, supported by the affidavits, made exhibits, would have entitled the party to a new trial; and we cannot doubt that he is entitled to the relief sought in his petition. Not a case cited by the appellee's brief, where relief was refused, was similar to this. No one of the cases was so well made out, in showing the iniquity of the judgment, and also satisfactory reasons why the defence had not been made at the proper time. And we have shown that both should concur.

The decree of the District Court, dissolving the injunction and dismissing the petition, is reversed and the cause remanded for further proceedings.

Reversed and remanded.