### J. B. GOODHUE v. J. MEYERS & Co.

(Case No. 1543.)

1. SETTING ASIDE JUDGMENT BY DEFAULT.— A judgment by default on an open account should have been set aside, when, two days after the judgment was taken, the defendant, in an uncontradicted affidavit in support of his motion to set aside the judgment, showed the serious sickness of the attorney to whom his defense was confided at the time the answer should have been filed, and his own sickness then and at the time of making the motion, coupled with a specific statement of a meritorious defense, sufficient if proved to have defeated the action.

2. CASE DISTINGUISHED.— This case distinguished from Power v. Gillespie, 27 Tex., 370; Watson v. Newsham, 17 Tex., 437, and Foster v. Martin, 20 Tex., 118.

3. SET-OFF.— See opinion in this case for a counterclaim for damages founded on a cause of action arising out of an account sued on, and so intimately connected therewith as to allow it to be set off against the account under art. 650, R. S.

APPEAL from Jefferson. Tried below before the Hon. W. H. Ford.

The opinion states the case.

---

---

*Tom J. Russell,* for appellant.

*O'Brien & John,* for appellees.

I. The court did not err in overruling the motion for a new trial filed November 20, 1882. Dowell *v.* Winters, 20 Tex., 796; Foster *v.* Martin, 20 Tex., 122.

. . . III. The severe sickness of appellant and his attorney at the time judgment by default was rendered is not sufficient ground for a new trial, unless the motion shows that such sickness prevented the presentation of an equitable and meritorious defense to appellees' cause of action. Ward *v.* Cobb, 14 Tex., 303, 304; Foster *v.* Martin, 20 Tex., 122; Dowell *v.* Winters, 20 Tex., 796; Hatchett *v.* Conner, 30 Tex., 114.

IV. The offsets or counterclaims against appellees' debt, set up in appellant's motion for new trial of December 5, 1882, consist wholly of unliquidated and uncertain damages, founded upon an alleged breach of contract by appellees, and is entirely distinct and independent of appellees' cause of action, and cannot be set up in offset to appellees' certain demand. Rev. Civ. Stat., art. 649; Carothers *v.* Thorp, 21 Tex., 361; Duncan *v.* Magette, 25 Tex., 247.

V. The motion of December 5th was not accompanied by the affidavit of witnesses by whom it was expected to make proof, nor was their absence accounted for. Spillers *v.* Curry, 10 Tex., 143; Ward *v.* Cobb, 14 Tex., 303, 304.

VI. The motion disclosed no diligence in preparing the defense, or that the evidence was newly discovered. Foster *v.* Spear, 22 Tex., 226; Vardeman *v.* Edwards, 21 Tex., 740.

WEST, ASSOCIATE JUSTICE.—A judgment by default was taken on the 18th of November, 1882, by appellees against the appellant for three hundred and thirty-one $\frac{76}{100}$ dollars ($331.76), being on an open account for goods, wares and merchandise sold to him.

On the 20th of November, 1882, appellant filed his motion to set aside this judgment, and to permit him to file an answer setting up just and meritorious defenses to the appellees' cause of action. The motion was based on two grounds: first, the serious sickness and absence from that cause of his attorney to whom he had confided the duty of filing his answer and of setting up the defenses upon which he relied to defeat appellees' recovery. His own severe illness at that time and at the time when the motion was made, he also set forth as a reason why he had been unable to move in the matter so as to avoid a judgment by default.

His second ground was, that he had a just and meritorious defense to the suit itself, and that he had fully explained to his absent attorney the nature of this defense and put him in possession of the facts on which it was based, and expected him to set that up in an answer in time to avoid a judgment by default. This defense was in substance to the following effect: That appellant, on or about the 5th of June, 1882 (this suit was filed in September, 1882), after the indebtedness sued on had accrued, entered into an agreement and contract with appellees, providing for its payment by appellant in a particular way; that at the date last mentioned the firm of Hostetter & McCoy, who were at that time also indebted to appellees, and who shortly afterwards became indebted to appellant, had on hand in the Colcasieu river a lot of railroad cross-ties, two thousand three hundred in number; that appellant purchased from them with the knowledge and consent of appellees for the sum of thirty-six cents a piece, amounting in all to the sum of $828; that by a contract and agreement then entered into between the appellant and the appellees, it was arranged and understood that appellant was to ship the ties to Houston, he having already sold them to the H. & Texas Central R. R. Co. at fifty cents per cross-tie; that at this time he made an agreement with appellees to pay over to them the amount of money that would be due to Hostetter & McCoy for the ties, on their account, and the appellees agreed to give appellant credit on his account (being the account sued on) with appellees the amount of the difference after paying to Hostetter & McCoy the amount due them by appellant on the purchase of the cross-ties, and the amount for which the cross-ties were sold to the railroad company, being at the rate of fifty cents per tie, and amounting to the sum of $1,150. But that just before the ties were delivered to the railroad company, about July 9, 1882, the appellees unlawfully took possession of said ties and sold them to other parties, and deprived appellant of the amount of profit he would have made on said sale. That the amount of profit appellant would have received and realized on said sale, which had already been made to the railroad company through their agent W. D. Cleveland, of Houston, after deducting the three cents to be paid for the timber in each tie, and two cents on each tie for the expenses of loading them on the cars, would have been nine cents on each tie; that clear of all expenses of all kinds there would have remained $207; and by the acts of the appellees in violation of their agreement with him, he was damaged and injured in that amount. The appellant further alleges, in connection with this contract of appellees, in reference to

the sale and appropriation of the proceeds of the sale of said ties,
that the firm of Hostetter & McCoy were, in connection with
said contract, indebted to appellant in the sum of $33.16, and that
appellees agreed and promised to pay or give the appellant a credit
on his account with them for the sum of $33.16, when the said ties
should be delivered to the railroad company; that they would not
give him this credit, and he has in addition to his other losses sus-
tained also this loss of $33.16.   He also claimed that appellees owed
him, growing out of this transaction, the sum of $25, expended by
him in bringing the ties down the Colcasieu river to the city of
Lake Charles, where the appellees, in violation of their contract
with appellant, seized the said ties.   The appellant also sets up that
the appellees at the time, and before he had quite consummated the
contract with Hostetter & McCoy, knew of the same, and were
fully informed as to the terms and objects of it, and that at that
time an arrangement was made, agreed upon and entered into be-
tween appellees and appellant in regard to the purchase of said ties,
and based on the same, and appellees were then and there fully in-
formed of the particulars of appellant's contract with the H. & T.
C. R. R. Co. as to the ties, and as to the price agreed to be paid ap-
pellant for them; that it was then understood and agreed by and
between appellees and appellant, that the whole transaction then on
hand was made and intended to enable the appellant to make and
realize the profit expected, so that he might apply the amount so
realized to the payment of the debt due by appellant to appellees,
being the debt sued on in this case; that it was arranged and agreed
that all the money arising from the transaction was to pass through
the hands of the appellees, so that they could apply the amount re-
ceived to the payment of the debt owing to them from appellant,
and also a debt due them from Hostetter & McCoy.   Appellant
further says that he obtained the actual possession of the ties, and
had them in his possession from the 5th to the 9th of June, 1882,
and that appellees during that period of time recognized his posses-
sion of them as lawful, and in accordance with their contract, and
insisted on appellant's having the ties loaded on the cars and shipped
by him as fast as cars could be procured; and that when appellees
seized the ties in violation of their said contract with appellant,
a portion of the ties were actually on the cars and ready to
be shipped to Houston in pursuance of the arrangement and agree-
ment between the appellant and the appellees above detailed.   To
this the appellant made oath.

We think that, under the facts sworn to by the appellant, and

there was no counter-affidavit filed, that he sufficiently accounted for his own absence and that of his attorney from the court house, and for his failure to file his defenses in time. We are also of the opinion that if all the facts set forth in the affidavit are true, and can be sustained by competent evidence, that the subject matter of the transactions are so closely connected with the debt sued on, that he could set up these matters by way of defense and offset to the account of appellees under the contract and agreement to that effect alleged to have existed between the appellees and appellant.

This case is a great deal stronger than that of Power v. Gillespie, 27 Tex., 370, or the case of Watson v. Newsham, 17 Tex., 437, or that of Foster v. Martin, 20 Tex., 118, and differs from them in the facts. In this case, unlike the others, the motion was made promptly and in ample time. It also contains a good and sufficient excuse why his defense was not filed before default day, and, unlike the cases cited, he sets forth and shows in detail all the particulars of a defense, which, if sustained on the trial by evidence to the satisfaction of a jury, will entitle him to a reduction of the appellees' demand.

Under all the circumstances, the case seems to come rather within the rule laid down in Dorn v. Best, 15 Tex., 66, and Spencer v. Kennard, 12 Tex., 187, than that of Power v. Gillespie or Foster v. Martin.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered January 26, 1883.]

