WESTERN UNION TELEGRAPH CO. v.
McGAUGHEY. (No. 216.)

(Court of Civil Appeals of Texas. Beaumont.
Nov. 20, 1917.)

1. APPEAL AND ERROR ☞760(1)—BRIEFS—ASSIGNMENTS OF ERROR.

Under court rule 101a (159 S. W. xi), prescribing that assignments in motions for new trial shall constitute the assignments of error, if it is proper practice to file separate assignments, the assignment carried into the brief should show by reference to the transcript that it is a copy of some ground of error in the motion.

2. NEW TRIAL ☞163(2)—GRANT—REVIEW AT LATER TERM.

The granting of a new trial by a trial court cannot be called in review at a subsequent term of the court upon a pleading in the form of a plea in abatement, where judgment was entered at the former trial but was set aside during the term.

3. TELEGRAPHS AND TELEPHONES ☞66(2) — EVIDENCE—DELAY IN DELIVERY OF MESSAGE.

In an action for damages for delay in receiving a death message, the admission of evidence that plaintiff, McGaughey, was sometimes called "McGoy," the addressee in the telegram, without showing defendant's knowledge thereof, was not error, under the evidence showing that the message could have been promptly delivered regardless of the spelling.

4. TRIAL ☞352(1) — CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF SPECIAL ISSUE.

A special issue, "Did the plaintiff fail to use ordinary care, as that term has been hereinbefore defined?" when she failed to take a buggy to D. and there take a train to N. Z., fully and affirmatively covered the issue of contributory negligence in not getting to a funeral at N. Z., although the jury had to look elsewhere for the definition of ordinary care, and the defendant telegraph company had submitted a question covering such point.

5. TRIAL ☞351(5) — SPECIAL ISSUES — MATTERS COVERED BY OTHER QUESTIONS.

It was proper to refuse questions to the jury as to an issue fairly submitted by other questions.

6. TRIAL ☞350(7) — DELAYED MESSAGES — CONTRIBUTORY NEGLIGENCE — SPECIAL ISSUES.

A question to the jury, Did the plaintiff fail to use ordinary care in failing to procure, or in failing to attempt to procure, a postponement of the funeral? was proper, where plaintiff left it to her son who was to be governed by the preservation of the body, and she would have gone anyway to see the casket if defendants had not been negligent in transmitting a telegram.

7. TELEGRAPHS AND TELEPHONES ⊖⟼73(4) — DELAYED MESSAGE — MISSPELLED NAMES — QUESTIONS FOR JURY.

In action for damages for delay in transmitting telegram, where evidence was conflicting as to whether the sender in telephoning a message spelled out the name of addressee, it was proper to submit the question to the jury, and, if an incorrect spelling was sanctioned, to submit the question of sender's negligence.

8. APPEAL AND ERROR ⊖⟼1062(1) — HARMLESS ERROR—SUBMISSION OF ISSUES—IMMATERIAL QUESTIONS.

In an action for damages for delay in transmitting a telegram, where the jury found that sender did not spell out addressee's name, submission of the question as to whether sender was negligent in giving an incorrect spelling was harmless, if erroneous.

9. TRIAL ⊖⟼351(6) — SUBMISSION OF ISSUES — QUESTION DISPOSED OF BY VERDICT.

Even if the addressee in a telegram is improperly named, a refusal to submit the question of whether the sender gave a wrong name is immaterial, where the jury found that defendant was negligent in transmission and delivery of the message as sent.

10. TRIAL ⊖⟼352(4)—SPECIAL ISSUES—REFUSAL—FORM OF REQUESTS.

In an action for damages for delayed telegram a requested question, "Did sender send the message sued on to Josh McGoy or to Josh McGaughey?" was properly refused, where the real question was as to how the sender pronounced the name McGaughey, it being the duty of one submitting an issue to request one framed in appropriate language.

11. TRIAL ⊖⟼352(4)—SPECIAL ISSUES—REFUSAL—EVIDENCE.

In an action for damages for delayed telegram, it was not error to refuse an issue relative to negligence of the sender, where there was no evidence of such negligence.

12. TELEGRAPHS AND TELEPHONES ⊖⟼70—DELAYED MESSAGES—DAMAGES—SET-OFFS.

In an action for damages for delayed telegram preventing plaintiff's attendance at a funeral, a special issue as to amount of credit for physical and mental damages plaintiff would have suffered if she had gone to the funeral, to be deducted from any recovery by plaintiff, was properly refused.

Appeal from District Court, Montgomery County; J. Llewellyn, Judge.

Action by Mrs. Mattie E. McGaughey against the Western Union Telegraph Company. Judgment for plaintiff and defendant appeals. Affirmed.

Opinion modified on motion for rehearing, 198 S. W. 1174.

Dean, Humphrey & Powell, of Huntsville, and J. T. Rucks, of Conroe, for appellant. W. N. Foster, of Conroe, and F. McDonald, of Montgomery, for appellee.

BROOKE, J. This is an action for damages originally instituted on August 27, 1914, by appellee against the appellant for the alleged negligent delay in the transmission and delivery of the following message, to wit:

"North Zulch, Texas, April 17, 1914.

"Josh McGoy, c/o Mrs. McGoy, Montgomery, Texas—Tell mother come at once. Think John is dieing.                           Bud McGoy."

There was some dispute with reference to whether the telegram, as sent, was addressed "McGoy" or "McGaughey." The action was for the sum of $1,900, alleged to have been suffered by the plaintiff in the nature of mental anguish on account of her failure to attend the funeral of her son John, and view his remains. The said message was delivered to the agent of appellant about 8 o'clock on the night of April 17, 1914, and was finally delivered to Josh McGaughey on the morning of April 18, 1914, about 8:30 o'clock. The plaintiff alleged that she was unable, after receiving said message, to reach North Zulch in time to attend the funeral of her son, which occurred there on the afternoon of April 18, 1914, at about the hour of 4 o'clock.

The appellant answered by general and special exception, general denial, and also pleaded that the appellee, Mrs. Mattie E. McGaughey, was herself guilty of negligence, in that she made no adequate effort to reach North Zulch in time for the funeral, even after she received the message sued upon. The appellant pleaded that one hour after she received the message sued upon herein, she stood idly by and watched her son Josh get into a buggy and drive to Bobbin and there take a train for North Zulch; that the said Josh McGaughey arrived at North Zulch about noon of the said 18th day of April, 1914, in ample time to view the remains of his brother John, and attend his funeral, and that if his mother, the appellee herein, had made any reasonable effort to reach North Zulch in time for the funeral, she could have done so just as her son did. The appellant further pleaded that the appellee was guilty of contributory negligence after receiving the message sued upon herein, in that she made no effort whatever to procure a postponement of the funeral until she could arrive at North Zulch, going all the way by rail, and that but for the almost gross negligence of the appellee in the ways hereinabove set forth, the appellee would not have suffered any damages whatever, because she could and would have viewed the remains of her son, and attended his funeral, even after receiving the message in the transmission of which she alleged the appellant was negligent.

The case was submitted to the jury upon special issues, and upon their findings the trial court entered a judgment in favor of appellee for the sum of $850. The court, in charging the jury, after defining negligence and contributory negligence, submitted to the jury 13 questions, which, together with the answers of the jury to each, are copied in full, as follows:

"Question No. 1. Was the message sued upon herein delivered by Coleman to Frost with the understanding between them at the time that said message might not be delivered until the following morning? (Answer Yes or No.)" Answer of jury: "No."

"Question No. 2. Did the defendant use ordinary care as that term has been hereinbefore defined, in the transmission and delivery of said telegram to Josh McGaughey in said town of

Montgomery? (Answer Yes or No.)" Answer of jury: "No."

"Question No. 3. Was such failure, if any, to use ordinary care, as that term has been hereinbefore defined, on the part of the defendant the direct and proximate cause of the failure of the plaintiff to attend the funeral of John McGaughey? (Answer Yes or No.) Answer of the jury: "Yes."

"Question No. 4. Would the plaintiff have attended the funeral of her son John McGaughey, if the message sued upon herein had been promptly delivered to Josh McGaughey in the town of Montgomery? (Answer Yes or No.)" Answer of the jury: "Yes."

"Question No. 5. Did the plaintiff fail to use ordinary care, as that term has been hereinbefore defined, when she failed to take a buggy or other conveyance after receiving the message sued upon herein and going to Dobbin and there taking the T. & B. V. Railway Company's train for North Zulch? (Answer Yes or No.)" Answer of the jury: "No."

"Question No. 6. Did the plaintiff fail to use ordinary care, as that term has been hereinbefore defined, in failing to procure or in failing to attempt to procure a postponement of the funeral? (Answer Yes or No.)" Answer of the jury: "No."

"Question No. 7. What amount of money if paid now will fairly and justly compensate plaintiff for the mental anguish, if any, she suffered on account of being absent from the funeral of her son and failing to see his remains? (Answer, giving the amount.)" Answer of the jury: "Eight hundred and fifty ($850.00) dollars."

"Question No. 8. Did Frost spell out to Coleman the name of the party to whom the message sued on was addressed? (Answer Yes or No.)" Answer of the jury: "No."

"Question No. 9. Did Frost spell out the name of the addressee of said message as McGoy or McGaughey, to said Coleman? (Answer, spelling out the name in the manner same as was spelled out by Frost to Coleman.)" Answer of the jury: ———.

"Question No. 10. If you say in answer to the above that the agent Frost spelled the name of the addressee of said message as McGoy, to Coleman, did Coleman confirm such method of spelling the same? (Answer Yes or No.)" Answer of the jury: ———.

"Question No. 11. Did Coleman use ordinary care, as that term has been hereinbefore defined, in confirming such spelling of said name? (Answer Yes or No.)" Answer of the jury: ———.

"If you answer the above question Yes, then I propound to you the following question:

"Question No. 12. Did such failure, if any, on the part of said Coleman to use ordinary care, as that term has been hereinbefore defined, proximately cause or contribute to the failure, if any, of the defendant to deliver said message within a reasonable time? (Answer Yes or No.)" Answer of the jury: ———.

"Question No. 13. If in answer to questions already propounded you have found that the message accepted by the defendant at North Zulch was addressed to Josh McGoy, if said message had reached the Montgomery office of the defendant so addressed on the night of April 17, 1914, would said message have been delivered to Josh McGaughey promptly? (Answer Yes or No.)" Answer of the jury: "Yes."

The court at the instance of plaintiff gave special charge No. 1 defining the terms proximate cause, and direct and proximate cause, and also at the instance of plaintiff gave special charge No. 2, reading as follows:

"At the request of plaintiff you are further instructed that if you answer question 8 in the negative you will not answer any of the subsequent questions, to wit, questions 9, 10, 11, and 12."

The appellant filed its motion for a new trial, which was overruled by the court, and notice of appeal was given in open court, and in due time the appellant perfected its appeal to this court.

[1] We are confronted, at the outset, with an objection on the part of appellee to the consideration of the first, second, and third assignments embraced in appellant's brief, and it is urged that under the rules and practice prescribed for Courts of Civil Appeals by the Supreme Court, the assignments should not be considered by this court, and appellee, therefore, presents that said assignments be stricken from the record. The following grounds of objection are urged to the consideration of these assignments:

(a) Appellant filed and had incorporated in the transcript separate assignments of error, notwithstanding a motion for new trial had been filed and appears in the transcript, and said assignments of error numbered first, second, and third in appellant's brief are in no way identified or pointed out as embraced in the transcript. No reference to the transcript where said assignments may be found is given either in connection with the assignments as carried in the brief or in the statement following the proposition submitted thereunder.

(b) Appellant's brief fails to make it appear that said first, second, and third assignments, as shown therein were in any way raised by appellant in the motion for new trial in the court below. Said assignments are not shown to be copies of the grounds of error in appellant's motion for new trial, and there is no reference in the brief to show that the issues presented in said assignments were in any manner raised in the motion for new trial.

It is contended that rule 101a (159 S. W. xi) specifically prescribes that in all cases in which a motion for new trial is filed the assignments contained in such motion, or amended motion finally ruled upon by the trial court, shall constitute the assignments of error, and it is submitted that even if it is proper practice to file separate assignments, the assignment carried into the brief should show by appropriate reference to the transcript that it is a copy of some ground of error shown in the motion for new trial. There is nothing in appellant's brief in connection with its presentation of the first, second, and third assignments going to point out that the questions raised were called to the attention of the trial court in the motion for new trial, and as presented they constitute an invitation to this court to search the transcript of 202 pages for the motion for new trial, and then to read said motion embracing pages 93 to 106, inclusive, of the transcript, in order to ascertain whether said assignments were embraced in said motion,

and that such a burden should not be imposed upon this court.

The assignments are subject to the criticism directed against them, and special attention is called to the cases of Farthing v. Illig, 179 S. W. 1094; Youngberg v. Bank, 156 S. W. 1139; De Lay v. Wolffarth, 154 S. W. 1031; Railway v. Cummins, 156 S. W. 543; Railway Co. v. Ledbetter, 153 S. W. 646. However, we desire to express the opinion of this court upon matters that are raised in the assignments of error, which are as follows:

"The court erred in overruling the defendant's plea in abatement, submitted to the court on the 10th day of October, 1916, and before this case was called for trial at the present term of the court, in that the court should have sustained said plea in abatement and dismissed this cause as far as further prosecution is concerned, for the reason that the court illegally and unlawfully set aside a former judgment of this court heretofore rendered herein on the 5th day of May, 1916."

[2] Appellant raises this question: That in the trial of a case which has been theretofore tried in said court, the action of the lower court can be called in question at a subsequent term of the court, and upon a subsequent trial of the case respecting and exercising its discretion in granting a motion for new trial submitted at a former term of the court. That a trial court has control of its judgments and decrees during a term is elementary, and if such control be exercised by vacating a judgment previously rendered during a term, and granting a new trial, this court is not aware of any way in which and by which such action can be reviewed before this court. There is no judgment to appeal from, and only an effort is being made on this appeal from a subsequent judgment rendered in the same cause to reinstate the original judgment of the trial court, which has been canceled and annulled by said court, and, in our judgment, this cannot be done.

Therefore we are called upon to say whether or not the granting of a new trial by a trial court of general jurisdiction can be called in review at a subsequent term of the court upon a pleading in the form of a plea in abatement, and whether or not this court can review, at a subsequent term of the court, upon a pleading in the form of plea in abatement, such action as was attempted to be had in this case.

In the case of Puckett v. Reed, 37 Tex. 308, the Supreme Court was confronted with the following proposition: There was a judgment by the district court on November 18, 1869. On the next day motion for new trial was made and overruled, and on the 26th, another motion was made and sustained, and a new trial granted, and the cause was continued for several terms of the court. In March, 1871, it appears that the court, on its own motion, set aside the order of November 26, 1869, and dismissed the cause from the docket. The court in deciding the question, used the following language:

"We think there is error in this judgment of the court which will require its reversal. It is believed that this judgment was rendered upon the supposition that after overruling the first motion for a new trial, the court lost all jurisdiction or control over the matter, and could not therefore hear a new motion, or reconsider its former rulings during the same term. But we think this not in conformity with the rulings of this court. In Wood v. Wheeler, 7 Tex. 16, this court said, 'Until the expiration of the term, the court had competent authority to amend, reverse, or annul its judgments; as well upon material, as immaterial points; upon the merits, as well as for matters of form.' It may be an objectionable practice to hear or permit the filing of several motions looking to the same object, and especially after the judgment of the court has been rendered, at least in ordinary cases; but there can be no doubt that the court may reconsider or reverse its rulings during the term, but not thereafter. The rulings of the court on the 26th of November, 1869, may have been a reconsideration of the previous order, refusing a new trial. It is a well-settled principle that the discretion of the district court in granting new trials during term, will not be revised by this court. Sweeney v. Jarvis, 6 Tex. 39, Goss v. McLaren, 17 Tex. 117 [67 Am. Dec. 646], and Spencer v. Kennard, 12 Tex. 180. And we do not think the law confers any such revisory power on the district court."

The quotation from the Supreme Court above referred to expresses the unanimous sentiments and opinion of this court, and without going into an extended argument or citing further authorities, we are of opinion that appellant's first assignment must be overruled.

[3] The second assignment assails the action of the lower court in permitting the plaintiff, over the objection of defendant, to propound to the witness Wiley Coleman certain questions stating that Josh "McGaughey" was sometimes called "McGoy," for the reason that the names were not one and the same in fact or in sound, and for the further reason that if they had been one and the same so far as some people were concerned, it had not been shown that the agents, servants, and employés of defendant had knowledge of any such facts, and the third assignment complains that the court erred in permitting the plaintiff, over the objection of the defendant, to prove by the witness Bud McGaughey that he was sometimes called McGaughey and sometimes called McGoy, for the reason that the words McGaughey and McGoy are not the same in sound or any other way in their natural and general acceptance, and for that reason the defendant could not be bound by any such facts, until it was first shown that its agents, servants, and employés knew that the McGaugheys were sometimes called by said name and sometimes called by the name of McGoy. There was no proof that the agents, servants, and employés of the defendant had any such knowledge, and therefore that the testimony was improperly admitted. Appellee's counter proposition under these assignments is that the evidence complained of,

under the circumstances disclosed by the record, was admissible.

Plaintiff had declared on the failure of the defendant to promptly deliver to her son a message addressed to Josh McGaughey and signed Bud McGaughey. Said message was introduced in evidence in connection with testimony of Josh McGaughey, and, as introduced, read to Josh McGaughey. Said message being delivered about 8:45 a. m., on April 18th. In defendant's answer it was pleaded that the message as delivered to defendant was addressed to Josh McGoy and signed Bud McGoy, and that because said message was so spelled delivery could not be made on the day it was received from the sender. It was pleaded that effort was made by telephone to find Josh McGoy at Montgomery, the night the message was accepted, and that said message would have been delivered had it been addressed to Josh McGaughey. Plaintiff also alleged that the true communication of the word McGaughey is as though it were spelled "McGoy," and the plaintiff's children at North Zulch were called "McGoy"; that the message was delivered at Montgomery in the form of McGaughey, and that, regardless of the pronunciation of said word and the spelling thereof, due and ordinary care would have resulted in said message being delivered to Josh McGaughey long prior to the actual time of delivery.

Wiley Coleman's testimony was that he phoned the message to the agent of the defendant at North Zulch and that the telegram was sent to Josh McGaughey and that the agent did repeat the message and it was to Josh McGaughey, but did not give the spelling.

Josh McGaughey testified that he was a merchant in the town of Montgomery, April 17 and 18, 1914, and the only merchant there by the same name of Josh and that there was no clerk, bookkeeper, or other person in the town of Montgomery other than witness by that name; that Montgomery is a small town of 400 or 500 people, and witness knows the people there and in the surrounding country, and that there are only two other people named Josh in that vicinity, both being negroes, to wit, Josh Warren and Josh McPherson. The witness also testified that he was well acquainted with Mr. Campbell, defendant's agent at Montgomery, who traded with him at the store all the time and called the witness Josh, and that witness was at the depot where defendant's office was nearly every day and sold Mr. Campbell groceries and delivered them to his house every day or so; that Campbell was the agent of the railroad as well as defendant's agent.

Defendant's agent, J. E. Campbell, testified that he received the message over the wire and that it reached him addressed to Josh McGoy. He testified:

"The reason I converted the name to Josh McGaughey was because I cannot use the typewriter fast enough to copy off telegrams as it comes and I use a plain sheet of paper and then copy it off, and when I received the message and seen the importance of it I telephoned it to him, and I knew the situation all the way through and I knew in reason that it was intended for Josh McGaughey, and I called him and called his attention to it being spelled McGoy. The telegram being addressed, under all the facts, I knew it was for him (Josh McGaughey). I telephoned the message to him right after I received it. According to my records, I telephoned the message to him at 8:10 or 8:15."

The witness further testified that he was at the depot where defendant has its office on the night of April 17th, until about 9:30, and if the message had come into his station and he had heard it he would have taken it and if it had been addressed to Josh McGoy, "I would have supposed, just as I did the next morning, that it was intended for Josh McGaughey, and I would have called him up and delivered it to him. When I did receive the message the next morning it was addressed to Josh McGoy, but I immediately called up Josh McGaughey and did not have to inquire who Josh McGoy was."

Defendant's witness Frost testified that he was agent of defendant at North Zulch on April 17, 1914, and that he received the message over the telephone and that he repeated it back to the sender, spelling each name, and that the sender confirmed same.

Mrs. Hastings testified for defendant that she was operator for the telephone company at Montgomery on the night of April 17, 1914; that she received a call from Houston that night asking her to locate a Mr. McGoy, and that she reported that Mr. McGoy was not known in Montgomery, and that Houston reported back that he was in Montgomery in business. On cross-examination, she testified that she remembered having answered a letter written to her by Mr. W. N. Foster in which questions were propounded and that she, in her letter answering same, had said that if a message, "Josh McGoy, care Mrs. McGoy. Tell mother come at once, think John is dieing," signed, "Bud McGoy," had reached her, she would have understood that it was for Josh McGoy and would not have understood that it was for Josh McGaughey, but would have thought it was intended for him and could have gotten him word in a short while that there was a call for him.

That in said letter from Mr. Foster she was also asked the question if a message had reached her addressed to Josh McGoy, care Mrs. McGoy, whether she would have understood it was intended for Josh McGaughey and that she was of opinion that she had replied "Yes." Also that in said letter she was asked if she could and would have been able to deliver the message to him without delay and especially that night and that she had replied "Yes."

It was contended that because of the sharp issue of fact made as to the spelling of the name of the sender and addressee of the message, as disclosed by the evidence of defendant's witnesses Frost and Wiley Coleman, who acted for the sender, and the contention of defendant that the message would have been promptly delivered but for the spelling thereof, the evidence was properly admitted.

The evidence goes to show that, regardless of whether the message was handled by defendant as McGaughey or McGoy, it would have been promptly delivered.

The view we take of the assignments, and the evidence in this case is that there was no error in the action of the court, and the assignments are therefore overruled.

[4] In the fourth assignment, the contention is made that the court erred in submitting to the jury special issue No. 5, as follows:

"Did the plaintiff fail to use ordinary care, as that term has been hereinbefore defined, when she failed to take a buggy or other conveyance after receiving the message sued upon herein, and going to Dobbin and there taking the T. & B. V. railroad train for North Zulch? (Answer Yes or No.)"

The objection is made that the language above was not a full and complete statement of the defendant's plea of contributory negligence; that the defendant did not care so must as to what the jury thought of the plaintiff's action, as they did to know what the jury thought would have been the action of an ordinarily prudent person, under same or similar circumstances, and whether or not such a person, after receiving the message sued upon, would have taken a buggy and gone via Dobbin and the Trinity & Brazos Valley Railway Company to North Zulch and attended the funeral. The objection is further urged that said question No. 5 was the statement of the defendant's plea in a negative way, when it was entitled to an affirmative submission of said issue, and also it is contended that said question No. 5 was erroneously submitted, because the court did not state for what purpose the trip to North Zulch was to be taken, and also that the court erred in its submission to the jury, for the reason that it does not apply the facts to the doctrine of negligence or lack of ordinary care, and is not sufficiently stated in itself to procure an answer without the necessity of the jury's looking to other parts of the charge. The defendant alleges error on the part of the court in such submission of said issue to the jury, when it had submitted to the court complete, full, and definite statements of the same issue, and requested the court to give them to the jury as tendered to him.

In our judgment, special issue No. 5 squarely and affirmatively covered and submitted the issue of plaintiff's contributory negligence in failing to go to North Zulch, after receiving the message. Therefore the assignment is overruled.

[5] Complaint is also made, in the fifth assignment, that the court erred in failing and refusing to submit to the jury the following special issues, which were tendered the court by the defendant in the same connection, to wit:

"(1) Would an ordinarily prudent person, under the same or similar circumstances, in the exercise of ordinary care, have taken a buggy after receiving the message sued upon herein, and ridden in said buggy to Dobbin, and there taken the T. & B. V. Railway Company's train for North Zulch, and attended the funeral?

"(2) Could the plaintiff in this case have gone in the hack, or buggy, with her son, even after receiving the message sued upon herein, and reached Dobbin in time to take the northbound T. & B. V. Railway Company's train, and reached North Zulch in time to have attended the funeral of her son, John McGaughey, and viewed his remains?

"(3) Could and would an ordinarily prudent person, under the same or similar circumstances, in the exercise of ordinary care, have taken a buggy after receiving the message sued upon herein, and ridden in said buggy to Dobbin and there taken the T. & B. V. Railway Company's train for North Zulch, and attended the funeral?"

Believing as we do, and as above set out, that the court fairly submitted the issue, the assignment is overruled.

[6] The sixth assignment is as follows:

"The court erred in submitting to the jury special issue No. 6, as follows: 'Did the plaintiff fail to use ordinary care, as that term has been hereinbefore defined, in failing to procure, or in failing to attempt to procure, a postponement of the funeral?'"

The answer to the question No. 6 was "No," and we do not understand that the defendant does not contend that the evidence fails to support the finding. It is, in our judgment, sufficient to say that the plaintiff's testimony shows that she left the matter of postponing the funeral to her son Josh, who was to be governed in the matter by the state of preservation of the body of John McGaughey; plaintiff not wanting to see the remains if they were not natural. If the funeral had been postponed, plaintiff would have gone anyhow, and would have attended the interment, as plaintiff wanted to be there and see her son's casket. In our judgment, special issue No. 6, as submitted by the court, was a correct presentation of the issue of plaintiff's negligence in reference to the postponement of the funeral of her son. It was a concrete application of the facts as appeared in the evidence. The assignment is overruled.

The seventh assignment challenges the action of the lower court in failing and refusing to submit to the jury the following special issue tendered by defendant, to wit:

"Could and would an ordinarily prudent person, in the exercise of ordinary care, under the same or similar circumstances, have procured a postponement of the funeral of the said John McGaughey until it would have been possible to have arrived at North Zulch and attended said funeral?"

What has been said under the sixth assignment of error applies here. This assignment is overruled.

[7, 8] The eighth, ninth, tenth, and eleventh assignments will be considered together, being as follows:

(a) Complaint is made that the court erred in submitting to the jury special issue No. 8, as follows:

"Did Frost spell out to Coleman the name of the party to whom the message sued on was addressed? (Answer Yes or No.)"

(b) The court erred in submitting to the jury special issue No. 9, as follows:

"Did Frost spell out the name of the addressee of said message as McGoy or McGaughey to said Coleman? (Answer Yes or No)."

(c) The court erred in submitting question No. 10 to the jury, as follows:

"If you say in answer to the above that the agent, Frost, spelled the name of the addressee of said message as McGoy to Coleman, did Coleman confirm such method of spelling the name? (Answer Yes or No.)"

(d) The court erred in submitting to the jury question No. 11, as follows:

"Did Coleman use ordinary care, as that term has been hereinbefore defined, in confirming such spelling of said name? (Answer Yes or No.)"

There was a sharp conflict in the testimony of J. W. Frost and Wiley Coleman, as to whether the name of the sender of the message was spelled out. Therefore it was proper to submit that issue to the jury, and if the jury found that Coleman had sanctioned an incorrect spelling, to ascertain by the further submission whether he was negligent in so doing. But if the issues complained of were improperly submitted, the error was harmless, in view of the jury's negative answer to the first question so submitted.

Frost testified that in receiving the message over the phone, he repeated same back to the sender, spelling each name, and that the sender confirmed the same. Coleman, for plaintiff, testified that he directed the message to be sent to Josh McGaughey; that Frost received the message and repeated it to him over the phone. That Frost did repeat the message and it read to Josh McGaughey, but "as he failed to spell the name I did not know at the time how he spelled it."

The jury, in answer to special issue No. 8, affirmed that the name was not spelled out by Frost when the message was received. Special issues Nos. 9, 10, and 11, in obedience to the court's charge, were not answered by the jury, question No. 8 having been answered in the negative. Inasmuch, however, as the only possible negligence that could be attributed to Wiley Coleman was dependent upon whether or not the name McGaughey was spelled out in the conversation between him and Frost, and that in order to submit said issue of his negligence, the court properly directed the question to have the jury determine whether the name McGaughey had been spelled out. Therefore the assignment is overruled.

[9] The twelfth assignment of error challenges the action of the court in failing and refusing to submit to the jury the following special issues, which were tendered by the defendant, to wit:

"(1) Did Wiley Coleman, acting for Bud McGaughey, ask J. W. Frost, agent of defendant at North Zulch, Tex., to send the message sued upon to Josh McGoy and not to Josh McGaughey? (Answer Yes or No.)

"(2) If you have answered Yes to the foregoing question, then state whether or not the said Wiley Coleman and the said Bud McGaughey, or either of them, was guilty of negligence in having the said Frost address the message to the said Josh McGoy and not to Josh McGaughey, and in answering this question, you will bear in mind the definition of negligence as hereinbefore given you in the instructions of the court. (Answer Yes or No.)

"(3) If you have answered Yes to the next preceding inquiry, then please state whether or not, if the said Wiley Coleman had requested the said Frost to send the message to Josh McGaughey and not to Josh McGoy, the same would have been delivered by Mrs. Ruby Hastings to the said Josh McGaughey at Montgomery, Tex., on the evening of April 17, 1914, and in ample time for the plaintiff to have reached North Zulch, Tex., and viewed the remains of her son John, and attended the funeral. (Answer Yes or No.)"

The way we view the matter, and regardless of the spelling or pronunciation of the sendee's name, it was the duty of the defendant to use ordinary care to transmit and deliver the message actually received and accepted by it, and what Coleman did or did not do, in reference to shaping the form of the message, or the names of the party mentioned therein, before defendant accepted it, or what Mrs. Hastings could and would have done if called upon to handle a different message, was wholly immaterial, and in our judgment, the court properly refused to submit the issue. Besides, question No. 2 submitted by the court to the jury the issue of defendant's negligence in the transmission and delivery of the message actually received and accepted by the defendant, and the jury's finding against the defendant is supported by the testimony.

[10] However, we may add that if the appellant desired that the jury determine what pronunciation of the name McGaughey was used by Wiley Coleman in connection with his placing the message with defendant's agent, it was his duty to request the court to submit such issue, framed in appropriate language, and having failed to do this, the court, in our opinion, was justified in refusing to give the question embraced in the twelfth assignment. The assignment is overruled.

[11] The thirteenth assignment is as follows:

"The court erred in failing and refusing to submit to the jury the following special issues, which were tendered by the defendant in the same connection, as follows, to wit:

"(1) Did J. W. Frost, agent of the defendant, at North Zulch, Tex., on the night of April 17, 1914, notify Bud McGoy, sender of the message sued upon herein, that the defendant could not transmit said message until the morning of April 18, 1914?

"(2) If you have answered Yes to the preceding interrogatory, then state whether or not Bud McGoy was guilty of negligence in failing to send to plaintiff over the telephone the message sued upon herein, and, in this connection, by the word negligence is meant a failure to use ordinary care, and ordinary care means that care which an ordinarily prudent person would have used under the same or similar circumstances.

"(3) If you have answered Yes to the next preceding interrogatory, then please state wheth-

er or not such negligence on the part of the said Bud McGoy was the proximate cause of the injuries alleged by the plaintiff, and by proximate cause is meant that cause which was so directly connected with, or related to, the injuries, that without such cause the injuries would not have occurred."

It is contended by appellee that the questions embraced in said assignment were properly not submitted by the court because the contract made for plaintiff's benefit, as evidenced by the suit message, was a completed and subsisting obligation, and the subsequent negligence of Bud McGaughey, of which plaintiff had no knowledge, was not chargeable to her, and also that the negligence of Bud McGaughey relative to the matter inquired about was not raised by the evidence, and the court therefore properly refused to submit the issue.

There is no testimony that goes to show that Bud McGaughey had any conversation or other communication with J. W. Frost about the message, and nothing which goes to show that he had any information on the night of April 17, 1914, suggesting that the message would not be delivered. On the contrary, it is plain that the only person who dealt with defendant's agent in reference to this message was Wiley Coleman, and Coleman's testimony was positive to the effect that the only report he made to Bud McGaughey was that he got the message through. In this state of the record, there is nothing to suggest negligence on the part of Bud McGaughey in not sending another communication to Josh McGaughey at Montgomery. The assignment is therefore overruled.

Complaint is made in the fourteenth assignment that the court erred in failing and refusing to submit to the jury the following special issue, to wit:

"In this case, the plaintiff testifies that if the contents of the message sued upon had been made known to her by her son Josh at the time he made known to her the contents of another message not sued upon herein, and instead of the contents of said latter message, she could and would have been prepared in 15 or 20 minutes, or 30 minutes at the outside, to take a hack or buggy for Dobbin, and there caught the T. & B. V. Railway Company train for North Zulch, Tex., and viewed the remains of her son John and attended his funeral. In this connection, would an ordinarily prudent person, in the exercise of ordinary care, knowing the situation and his mother's nature and disposition as Josh did, have acted as Josh did, and notified plaintiff of her son's death, instead of advising her of the contents of the message sued upon herein?"

It is urged that had the suit message been seasonably delivered to Josh McGaughey, it is clear from the evidence of plaintiff, as well as the said Josh McGaughey, that plaintiff would have been on her way to North Zulch before the second message announcing her son John's death reached Montgomery. We are of opinion that there was no error in the action of the court, and the assignment is overruled.

[12] Complaint is made that the court erred in failing and refusing to submit to the jury the following special issues, to wit:

"(1) Would the plaintiff have attended the funeral of her son John McGaughey, even if the message sued upon herein had been promptly delivered on the evening of April 17, 1914?

"(2) If you have answered the next preceding interrogatory in the affirmative, then please state whether or not in making the trip to North Zulch, Tex., by rail, and in attending the funeral of her son, she would have been damaged physically or mentally. If Yes, then what amount do you estimate, if paid now in cash, would fairly compensate her for such damages, and being the amount you would say should be allowed as a credit on any judgment you may render herein against the defendant?"

Without comment, it is sufficient to say that, in our judgment, the assignment must be overruled.

The action of the lower court is challenged in the sixteenth assignment of error in failing to submit to the jury the following special issue tendered by defendant, to wit:

"Could and would an ordinarily prudent person, or the agents and servants and employés of a corporation, have exercised any greater degree of care to handle the message sued upon herein than did the agents, servants, and employés of this defendant, and, in answering this question, you will base your answer upon the assumption that the circumstances were the same or similar?"

Without comment, further, we are of opinion that the assignment should be overruled.

The seventeenth assignment is as follows:

"The court erred in failing and refusing to give to the jury the defendant's request for an instructed verdict in this case, for the following good and sufficient reasons, to wit: (1) The undisputed evidence shows that the suit message was delivered to the company addressed to Josh McGoy, when no such person lived at all in Montgomery, Tex., the town to which it was sent. (2) The undisputed evidence clearly shows that had the message been addressed to Josh McGaughey and not to Josh McGoy, it would have reached its destination at Montgomery, Tex., on the evening of April 17, 1914, through the hands of Mrs. Ruby Hastings, acting as an agent for this defendant at the time. (3) The evidence clearly shows that even after the message was delivered, the plaintiff could have attended the funeral of her son, and that she made no effort whatever to go and attend his funeral, but on the other hand, stood and permitted her son to drive off and go to the funeral without her. Consequently, she cannot recover, as her own negligence was the direct and proximate cause of her damage, if any. (4) The evidence, and all the evidence, shows that the plaintiff could have procured a postponement of the funeral until she could have attended it, going all the way to North Zulch by rail. Inasmuch as she made no effort whatever to postpone it, she should not recover any damages of this company, for her own negligence and gross negligence alone caused her to fail to attend the funeral of her son."

This assignment will be considered in connection with the eighteenth, nineteenth, and twentieth assignments, as follows:

"(a) The trial court erred in sustaining the verdict of the jury and entering judgment thereon, for this: The jury answered question No. 2 submitted by the court, and said answer was to the effect that the defendant did not exercise ordinary care in handling the message sued upon and promptly transmitting the same, and in this the defendant avers that the ver-

dict of the jury is against the great weight and degree of credible evidence, and without evidence to support it, and contrary to the evidence, in that the evidence, and all the evidence, shows that the agents and servants of the defendant worked rapidly and carefully on said message from the time it received the same until 10 o'clock the same night, and after Montgomery, Tex., office had closed for the night. The evidence further shows that the agent at Montgomery did his best with the duties incumbent upon him, and the agents and servants of the defendant got the message through promptly on the morning of April 18, 1914. All evidence shows that the defendant exercised all possible care and every effort to transmit promptly the message sued upon herein.

"(b) The trial court erred in sustaining the verdict of the jury and entering judgment thereon, for this: The verdict of the jury is contrary to the evidence and without evidence to support it, in this, the jury, in answer to question No. 5 submitted by the court, found that the plaintiff exercised ordinary care to go to the funeral, as originally sent, after she had received the message sued upon. This verdict of the jury is in the very face of the plaintiff's own testimony, for she had at least an hour to prepare herself after receiving the message and go with her son Josh to the funeral. She said a half hour would have been sufficient. And yet, in the face of her own admissions, the jury found that she could not have gotten ready and gone with her son Josh in the buggy to Dobbin and taken the train to North Zulch and attended the funeral as originally set. The verdict of the jury is without any evidence to support it, for all the testimony shows that she sat by and permitted a buggy to leave her very door, and had she gotten in it she would have attended the funeral. Consequently, she should not recover any damages in this cause, because her own negligence, after receiving the message, is alone responsible for her failure to attend the funeral of her son and view his remains.

"(c) The trial court erred in sustaining the verdict of the jury and entering judgment thereon, for this: In answer to question No. 6 submitted by the court, the jury found that plaintiff did not fail to exercise ordinary care, when she failed to attempt to procure a postponement of the funeral of her son. The defendant avers that said finding of the jury is absolutely without evidence to support it, and is contrary to the evidence, because the evidence shows conclusively that, if any request had been made, the funeral could have been postponed until Sunday afternoon, April 19, 1914, and plaintiff could have attended the same and viewed the remains of her son. The proof shows that plaintiff knew early on April 18, 1914, and on the morning of said day, that the funeral was arranged for that afternoon, and she was asked by her son at North Zulch to advise as to her plans. She had a message sent to her son at North Zulch, the sender of the suit message, that she was coming. She made no effort to postpone the funeral, when she saw she could not get there in time for the funeral as originally set. The defendant says that any ordinarily prudent person who really wanted to attend her son's funeral would have moved heaven and earth to postpone it until she could get there. The defendant contends that if plaintiff had exercised any care at all, she could have reached the funeral as originally set, but that she could, at least, have attended the same at a later date, if she had made any effort at all to postpone the same. Therefore the defendant contends that the plaintiff should not recover herein, for the reason that her failure to attend her son's funeral and view his remains was the direct and proximate result of her own negligence, after receiving the message sued upon herein."

Having gone over the testimony thoroughly, and having the case presented fairly upon the issues made by the parties to the suit, the court is of opinion that the assignments should be overruled.

By the twenty-first assignment, complaint is made that the trial court erred in overruling defendant's motion for new trial, all of which more fully appears from defendant's bill of exceptions No. 20.

We believe, from our personal acquaintance and from the skill with which the appellant's attorneys have presented its case in this court, that the plaintiff has had a fair and impartial trial, that the judgment found by the jury is amply justified by the evidence, that the defendant has been protected in all its right in the trial of this case, that the judgment was reasonable, and so believing, the judgment of the court below is in all things affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes